UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| ELSA ANNETTE LEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:16 CV 37 DDN |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

This action is before this court for judicial review of the final decision of the Commissioner of Social Security finding that plaintiff Elsa Annette Lee is not disabled and, thus, not entitled to disability insurance benefits ("DIB") or supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1381-1385. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is affirmed.

## I.  BACKGROUND

Plaintiff was born in 1969 and has work experience as a fast food cook and home attendant. (Tr. 26, 97, 99-100, 118). She filed her application for DIB and SSI in June 2013, alleging a total disability onset date of February 15, 2011.[2] (Tr. 97-98, 332, 337-

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill in her official capacity is substituted for Carolyn W. Colvin as the defendant in this suit. 42 U.S.C. § 405(g) (last sentence).

[2] To be entitled to disability benefits under Title II of the Act, plaintiff has the burden to show disability prior to the expiration of her insured status on March 31, 2016. (Tr. 9,

44). Plaintiff claimed that fibromyalgia, arthritis, migraine headaches, and degenerative disc disease in her neck limited her ability to work. (Tr. 117). Her applications were denied in September 2013, and she requested a hearing before an administrative law judge ("ALJ"). (Tr. 40-46, 355-56). A hearing was held on December 5, 2014, where plaintiff testified. (Tr. 357-92). By decision dated March 12, 2015, the ALJ found that plaintiff was not disabled under the Social Security Act. (Tr. 13-27). The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform jobs available in the national economy. *Id.* On April 5, 2016, the Appeals Council of the Social Security Administration denied plaintiff's request for review of the ALJ's decision. (Tr. 7-12). Consequently, the ALJ's decision stands as the final, judicially reviewable decision of the Commissioner.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Specifically, she asserts that the ALJ (1) failed to give proper weight to a treating physician's opinion and (2) failed to identify proper medical evidence to support the determination of plaintiff's RFC.

A. **Medical Record and Evidentiary Hearing**

The court adopts the parties' unopposed statements of facts (Docs. 16 and 21). These facts, taken together, present a fair and accurate summary of the medical record and testimony at the evidentiary hearing. The court will discuss specific facts as they are relevant to the parties' arguments.

---

16, 104, 111, 113). *See* 20 C.F.R. § 404.130; *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009). To be entitled to supplemental security income under Title XVI of the Act, plaintiff must show disability before or while her application was pending. *See* 42 U.S.C. § 1382c; 20 C.F.R. §§ 416.330 and 416.335. Thus, the relevant period for consideration in this case is from February 15, 2011, plaintiff's alleged onset date, through March 12, 2015, the date of the ALJ's decision.

**B.     ALJ's Decision**

The ALJ found that plaintiff meets the insured status requirements of the Act and has not engaged in substantial gainful activity since her alleged onset date. (Tr. 18). He found that plaintiff suffers from the severe impairments of fibromyalgia, migraines, cervical and lumbar degenerative disc disease, osteoarthritis, mild bilateral wrist neuropathy, and obesity. (Tr. 18). The ALJ concluded that plaintiff's impairments do not meet or equal an impairment listed in the Commissioner's regulations. (Tr. 18-20).

The ALJ accounted for plaintiff's complaints and, in considering the medical evidence, determined that plaintiff's impairment left her with the RFC to "perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)," with the following exceptions:

> [S]he can lift and/or carry 10 pounds occasionally and 5 pounds frequently, stand and/or walk 15 minutes at a time up to 2 hours total, and sit 45 minutes at a time up to 6 hours total in an 8-hour workday. She cannot climb ladders, ropes, or scaffolds or crawl, but can occasionally climb ramps and stairs, stoop, kneel, and crouch. She can frequently reach, handle, and finger. She must avoid work environments with extreme heat or cold and hazards such as dangerous machinery and unprotected heights.

(Tr. 21).

The ALJ found that the objective medical evidence did not support the severity of plaintiff's allegations. (Tr. 22). Although plaintiff complained she has pain, headaches, fatigue, and limited mobility, the ALJ determined that "the medical evidence of record suggests some limitations, but not enough to preclude all work within the [RFC]." (Tr. 22). He noted normal or mild medical exams and imaging. (Tr. 22-23). He also noted improvement of symptoms with treatment, and that plaintiff reported no side effects to medications at the time of the hearing. (Tr. 23-24). The ALJ also observed that plaintiff's work history and activities of daily living supported the finding that she remains capable of other work. (Tr. 24). In particular he emphasized plaintiff's hearing testimony about working through pain and headaches in 2010 and 2011, continuing to keep active with a variety of chores, and continuing to take care of her 12-year-old daughter. (Tr. 24).

The ALJ gave partial weight to the Medical Source Statement ("MSS") opinion of plaintiff's family practitioner, David Dale, D.O. (Tr. 25). He gave greater weight to Dr. Dale's findings that plaintiff could lift or carry 10 pounds occasionally, stand or walk 15 minutes at a time up to 2 hours, and sit 45 minutes at a time in an 8-hour day, as these findings corresponded with plaintiff's medical exams, improved symptoms with treatment, and varied activities of daily living. (Tr. 25). The ALJ gave little weight, however, to Dr. Dale's findings that plaintiff could only sit up to 2 hours in an 8-hour workday and needed to lie down or recline every 15-45 minutes, because Dr. Dale did not cite any specific exam findings in support, the limitations appeared to be based on plaintiff's subjective complaints, and the limitations were inconsistent with plaintiff's reported activities of daily living. (Tr. 25). The ALJ also gave little weight to Dr. Dale's conclusion that plaintiff was permanently unable to work, because such a statement regards disability, which is an issue reserved to the Commissioner. (Tr. 25). He found the statement was also unsupported by any objective findings. (Tr. 25).

The ALJ gave great weight to the opinion of the state agency psychological consultant, who found that plaintiff's anxiety and affective disorder caused only mild limitations in plaintiff's activities of daily living; concentration, persistence, or pace; and social functioning. (Tr. 25). The ALJ found this to correspond with plaintiff's mental status examinations, conservative mental health treatment, and reported activities of daily living. (Tr. 25).

Based on the testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff would be unable to perform her past relevant work as either a fast food cook or a home attendant because both of these occupations required medium strength. (Tr. 26, 164-71). However, considering plaintiff's age, education, work experience, and RFC, the ALJ relied on VE testimony to find there were jobs in significant numbers in the national economy that a person like plaintiff could perform. (Tr. 26, 27, 164-71). The ALJ therefore concluded that plaintiff is not disabled. (Tr. 27).

## II. DISCUSSION

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Specifically, she asserts that the ALJ failed to give proper weight to Dr. Dale's opinion and failed to identify proper medical evidence to support the determination of her RFC.

### A. General Legal Principles

In reviewing the denial of Social Security disability benefits, the court's role is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the court may not reverse it merely because there is substantial evidence in the record that would support a contrary outcome or because the court would have decided the case differently. *See Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).

To be entitled to disability benefits, a claimant must prove that she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in a death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a) (1) (D), (d) (1) (A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 CFR § 404.1520(a) (4); *see also Pate-Fires*, 564 F.3d at 942 (describing the five-step process).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. 20 C.F.R. § 404.1520(a) (4) (i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Step Four and Five. Step Four requires the

Commissioner to consider whether the claimant retains the RFC to perform past relevant work ("PRW"). *Id.* at § 404.1520(a) (4) (iv). The claimant bears the burden of demonstrating she is no longer able to return to her PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to her PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(a) (4) (v).

B. **The ALJ Properly Weighed Dr. Dale's Testimony**

It is the function of the ALJ to weigh conflicting medical evidence. *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). Plaintiff argues that the ALJ improperly rejected the findings of Dr. Dale as to plaintiff's functional limitations, against the Eighth Circuit's strong preference for the opinions of treating physicians. (Doc. 16 at 9-10). While the Eighth Circuit and the Commissioner's own regulations generally give controlling weight to the opinion of a treating physician, this is only if the opinion is well supported by medically acceptable diagnostic techniques and is not inconsistent with the other substantial evidence. *Prosch v. Astrue*, 201 F.3d 1010, 1012-3 (8th Cir. 2012). A treating physicians' opinion may be disregarded in favor of other opinions if it does not find support in the record. *See Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007).

When an ALJ does not give the treating source's opinion controlling weight, he must consider several factors to assess the weight to give the opinion. *Owens v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008). These factors include the length of the treatment relationship and the frequency of examination, the nature and extent of treatment relationship, supportability with relevant medical evidence, consistency between the opinion and the record as a whole, the physician's status as a specialist, and any other relevant factors brought to the attention of the ALJ. *See* 20 C.F.R. §§ 404.1527(c) (1)-(6); 416.927(c) (1)-(6). For example, the more consistent an opinion is with the record as a whole, the more weight is given to that opinion. *See* 20 C.F.R. § 404.1527(c) (4). Although an ALJ is not required to discuss all the factors in determining what weight to

give a physician's opinion, the ALJ must explain the weight given the opinion and give "good reasons" for doing so. *See* 20 C.F.R. §§ 404.1527(c) (2), 416.927(c) (2).

Dr. Dale treated plaintiff's fibromyalgia from 2010 to 2013. (Tr. 183, 217-28, 247, 260). In March 2011, Dr. Dale signed an open letter advising that plaintiff was "unable to work in any capacity" and that this restriction was "permanent." (Tr. 183). His treatment notes recorded that plaintiff has areas of tenderness to palpitation, limited range of motion, gait disturbance, and severe fatigue. (Tr. 217-31, 247). In July 2013, he prepared a Medical Source Statement form ("MSS") stating plaintiff could lift and carry no more than 5 pounds frequently; lift and carry no more than 10 pounds occasionally; stand or walk no more than 15 minutes at one time; stand or walk no more than 2 hours total in an 8-hour work day; sit no more than 45 minutes at one time, with the need to lie down or recline every 15-45 minutes; sit no more than 2 hours total in an 8-hour workday; push or pull for no more than 30 minutes at one time; only occasionally balance; and never climb, stoop, kneel, crouch, crawl, reach, handle, or finger. (Tr. 225-26).

The ALJ gave partial weight to Dr. Dale's MSS opinion. (Tr. 25). He gave greater weight to Dr. Dale's findings that plaintiff could lift or carry 10 pounds occasionally, stand or walk 15 minutes at a time up to 2 hours, and sit 45 minutes at a time in an 8-hour day, as these findings corresponded with plaintiff's medical exams, improved symptoms with treatment, and varied activities of daily living. (Tr. 25). The ALJ gave little weight, however, to Dr. Dale's findings that plaintiff could only sit up to 2 hours in an 8-hour workday and needed to lie down or recline every 15-45 minutes, because Dr. Dale did not cite any specific exam findings in support, the limitations appeared to be based on plaintiff's subjective complaints, and the limitations were inconsistent with plaintiff's reported activities of daily living. (Tr. 25).

Plaintiff concedes that Dr. Dale did not cite specific exam findings for the limitations to which the ALJ gave little weight, but argues that Dr. Dale did not cite specific exam findings for the limitations he accepted either. She asserts this is arbitrary and not a "good reason" as required by the regulations. (Doc. 16 at 15). She also asserts

that the MSS reflected Dr. Dale's professional opinion—not plaintiff's subjective complaints. Furthermore, she argues that the ALJ's assessment that the MSS is inconsistent is itself conclusory, as the ALJ does not actually identify any contradictory evidence. She asserts that, on the contrary, Dr. Dale's notes are consistent with the record, pointing to the notes of plaintiff's rheumatologist, Dr. Melinda Reed, MD, who recorded that plaintiff suffered from frequent fatigue, muscle tenderness, hand weakness and numbness, hand swelling, joint pain, decreased range of motion, and impaired gait. (Tr. 253-62).

The Eighth Circuit has directed district courts to consider MSS forms as "a source of objective medical evidence." *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005). Findings on such forms should be considered in the light of the related treatment records. *Id*. They should only be rejected where the limitations on the form "stand alone," were never mentioned in the physician's records or treatment, or were not supported by any objective testing or reasoning. *Id.* (citations omitted).

In discounting Dr. Dale's opinion, the ALJ discussed primarily its supportability and consistency. He stated it was not well-supported, as it did not cite specific exam findings and seemed to rely on plaintiff's subjective complaints. As to the citation of specific exam findings, the ALJ's opinion states that the findings to which he gave greater weight "correspond with the claimant's exams, improved pain with medications, and varied activities of daily living." (Tr. 25). This was in contrast to the findings that the ALJ gave little weight, which did not correspond to these factors, and, moreover, did not contain any explicit reference to supporting evidence. (Tr. 25). It is not simply that the MSS failed to cite to exam findings; it is that such exam findings do not exist in the record. The ALJ credited the findings that plaintiff could lift or carry 10 pounds occasionally, stand or walk 15 minutes at a time up to 2 hours, and sit 45 minutes at a time in an 8-hour day, as these corresponded with plaintiff's exams, as well as her improved symptoms with medication and varied activities of daily living. (Tr. 25, 220, 242, 272). But the ALJ could not find, nor can this court find, any exam findings in the record to support Dr. Dale's findings that plaintiff could only sit for 2 hours in an 8-hour

8

workday with the need to lie down or recline every 15-45 minutes. (Tr. 25). In the only note that might potentially support these findings, the doctor recorded that plaintiff complained she couldn't "stand, sit, walk, or [engage in] repetitive action." (Tr. 224). But this was not a medical finding or observation; it was simply the recording of plaintiff's own complaint. (Tr. 224). Accordingly, it was not improper for the ALJ to reject these limitations. *See Reed*, 399 F.3d at 921.

As to the ALJ's assertion that Dr. Dale was reciting the subjective complaints of the plaintiff, plaintiff argues that the MSS form itself states that it reflects Dr. Dale's "professional opinion." (Tr. 225-26). This is not dispositive. In reviewing all of the evidence, the ALJ decided Dr. Dale's recommended limitations appeared to be largely based on plaintiff's own subjective complaints. The record contains several instances of such complaints: plaintiff's complaint upon examination, mentioned above, that she couldn't stand, sit, walk, or make repetitive actions (Tr. 224), and her hearing testimony, where she stated "I can't sit for long, I can't stand for very long" and posited she can stand for only 10-15 minutes at a time and sit for 20-30 minutes at a time (Tr. 364, 370-71). The record lacks any treatment notes or any other evidence to support these complaints, except for a conclusory doctor's note stating that plaintiff could not work "in any capacity." (Tr. 183).

The ALJ also emphasized the inconsistency of Dr. Dale's sit and lie-down limitations with the rest of the record. (Tr. 25). Plaintiff argues that the ALJ failed to identify any objective evidence contradicting Dr. Dale's opinion. However, the ALJ in fact pointed to specific evidence. (Tr. 25). He stated that the sit and lie-down limitations:

> are not entirely consistent with the claimant's stabilized fibromyalgia symptoms and reported abilities to drive her daughter to school three days a week, make simple meals 2-3 times a day, perform housework, care for her daughter, and attend some of her daughter's school events such as sports and parent-teacher conferences.

(Tr. 25).

9

The ALJ referred to plaintiff's fibromyalgia symptoms as stabilized. In his decision, he discussed plaintiff's treatment history in detail, concluding that the record suggested some limitations but not enough to preclude all work. In February 2011, she had 18/18 tender points (Tr. 221), but by November 2011, eight months following the doctor's note that stated she could no longer work, plaintiff was found to have 0/18 tender points, a normal gait and musculoskeletal exam, and no acute distress. (Tr. 192-93, 218). In 2012, despite complaining of a painful range of motion in the spine with multiple areas of tenderness, spinal x-rays revealed only mild abnormalities, with no compression and "no real signs of nerve impingement." (Tr. 232, 249-52, 266). She had a coordinated and smooth gait, "fairly well-preserved" range of motion of the cervical and lumbar spine, normal motor strength and tone, and mostly 2+ deep tendon reflexes. (Tr. 242-45). In 2014, she visited rheumatology provider Deanna Davenport, APRN, and noted increased fibromyalgia symptoms in the past few years but improved symptoms since the last summer. (Tr. 265). Ms. Davenport noted in February 2014 that plaintiff's range of motion in her neck was painful, but didn't appear impaired. (Tr. 266). In December 2013 and September 2014, Dr. Michael Rothermich, a family practitioner like Dr. Dale, assessed plaintiff's fibromyalgia as stable and controlled on Tramadol. (Tr. 272-73).

The ALJ also discussed in detail plaintiff's response to treatment: she reported side effects with various medications to her doctors during treatment, but as of the hearing, reported having no side effects. (Tr. 260, 263, 368). The ALJ also emphasized that plaintiff did not follow her treatment recommendations. From April 2012 to July 2014, Dr. Melinda R. Reed, a rheumatologist, and Ms. Davenport repeatedly instructed plaintiff to perform regular exercise to improve her fibromyalgia symptoms, but plaintiff continued to admit that she did not exercise. (Tr. 253-64). Plaintiff also reported a pain of 6/10 with medication in September 2014, as opposed to a 10/10 in June 2013. (Tr. 242, 272). The ALJ noted that despite alleging 10/10 pain on average, which is "15/10" at its worst, plaintiff has never required emergency room treatment or hospitalization for uncontrolled pain. (Tr. 242). The ALJ also noted that plaintiff's allegation that nothing

10

could be done for her pain did not correspond with her largely conservative treatment, "as she does not appear to have attempted orthopedic treatment since 2011, neurological treatment for her headaches, surgery, injections, use of a TENS unit, or physical therapy." (Tr. 24).

As for the daily activities cited by the ALJ, plaintiff argues that the limited and periodic activities identified do not reflect an ability to perform competitive work eight hours per day, five days per week, or an equivalent schedule. However, "[a]llegations of pain may be discredited by evidence of daily activities inconsistent with such allegations." *Davis v.* Apfel, 239 F.3d 962, 967 (8th Cir. 2001). "[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009).

This evidence and case law notwithstanding, the Eighth Circuit has recognized daily activities analysis as a suspect criterion in the context of fibromyalgia cases. *Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003). In this context, "consideration should be given to . . . the [q]uality of daily activities" and the "frequency, appropriateness, and independence of the activities." SSR 85-16. Here, the ALJ emphasized that plaintiff was able to work full-time in 2010 through 2011 by fighting through her pain and headaches—symptoms that do not appear to have been significantly worse at the time of filing for disability than they had been in her last year of work. (Tr. 296, 362, 364-65, 379-86). The ALJ noted that "Dr. Dale's exams were relatively unchanged from 2010 to 2011, which tends to suggest she did not experience significantly worsened symptoms as of the alleged onset date." (Tr. 24, 218-224). Plaintiff testified that she only stopped working because her doctor told her to. (Tr. 362). Her job at the time was physically demanding: she was on her feet for seven to eight hours per day, five days per week, and was lifting up to 60 pounds at a time. (Tr. 384). The quality, frequency, and appropriateness of this activity are all incongruent with an allegation of disabling fibromyalgia.

Plaintiff also reported to doctors in July 2014 that she had to do more physical work in the home. (Tr. 263-64). The ALJ noted further that plaintiff consistently reported being up and down all day doing housework, driving her daughter to school at least three days a week, making simple meals two to three times a day, and grocery shopping one to two times a month. (Tr. 24, 128-38, 253, 257). Despite testifying at her hearing that it was too painful to drive more than a few blocks (Tr. 377-78), she stated in June 2013 that she could drive up to 35 miles at a time before needing a break. (Tr. 126-27).

A district court will affirm the ALJ's findings if supported by substantial evidence in the record as a whole. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). Even a treating source opinion does not receive controlling weight if it is inconsistent with other substantial evidence in the record. There is no doubt that plaintiff is significantly limited due to her medical impairments and associated pain, as reflected in the ALJ's sedentary-level RFC determination. (Tr. 21). However, plaintiff's reported activities and the medical treatment records showing stabilized symptoms and non-disabling objective findings are inconsistent with Dr. Dale's opinion regarding plaintiff's extremely reduced sitting and lie-down limitations. For the reasons discussed, the ALJ's grant of "little weight" to some of Dr. Dale's opinion is supported by substantial evidence in the record as a whole.

The ALJ also gave little weight to Dr. Dale's conclusion that plaintiff was permanently unable to work, because a statement regarding disability is an issue reserved to the Commissioner. (Tr. 25). It was, moreover, unsupported by any objective findings, as outlined above. A medical opinion that plaintiff is disabled is an issue reserved for the Commissioner. *See Choate v. Barnhart*, 457 F.3d 865, 870 (8th Cir. 2006). The ALJ nonetheless did not ignore this opinion but evaluated it alongside all of the record evidence to determine the extent to which it was supported. 20 C.F.R. § 404.1527; SSR 96-5p. He noted that "Dr. Dale did not give any specific functional limitations or cite any objective findings in support," also observing that "the record reveals gradual improvement with treatment and largely intact activities of daily living." (Tr. 25). For

the reasons previously discussed, these reasons are supported by substantial evidence in the record and the ALJ lawfully gave this opinion little weight.

C.     **The ALJ Lawfully Determined Plaintiff's RFC**

Plaintiff argues that the ALJ failed to identify any "specific medical facts" to support the physical limitations outlined in plaintiff's RFC "except where he did selectively adopt the findings of Dr. Dale as to lifting, carrying, standing, and walking." (Doc. 16 at 18; Tr. 25). Plaintiff argues that once the ALJ rejected Dr. Dale's limitations as to sitting and lying down, he needed to explain how the remaining medical evidence supported his RFC conclusions. (Tr. 16 at 18-19).

The RFC assessment is specifically reserved to the Commissioner. 20 C.F.R. § 416.927(d) (2). In assessing the claimant's RFC, an ALJ must consider all of the relevant evidence, including "an individual's own description of [her] limitations." *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003). The ALJ must explain his assessment of the RFC with specific references to the record. SSR 96-8p (the RFC assessment must cite "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)" in describing how the evidence supports each conclusion). Throughout this inquiry, the burden of persuasion to prove disability and to demonstrate RFC is on the claimant. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Most of the ALJ's RFC conclusions came directly from Dr. Dale's opinion. The ALJ credited the majority of this opinion, specifically adopting Dr. Dale's recommended limitations as to lifting, carrying, standing, and walking in the RFC. (Tr. 21, 225-26). The ALJ considered plaintiff's description of her limitations, but ultimately rejected the sitting and lying-down modifications. (Tr. 22-25). This decision is supported by medical evidence, as discussed above: plaintiff's normal medical exam findings, as well as her stabilized symptoms with conservative treatment. (Tr. 22-25, 193, 219-20, 223, 232, 244, 246, 249-54, 256-58, 261, 263-66, 270, 272-73, 290). The ALJ also considered other relevant evidence: plaintiff's history of working through the pain, as well as her varied

activities of daily living. (Tr. 22-25, 126, 128-30, 132-34, 296, 362, 364-65, 376-77, 379-86).

As to climbing, stooping, kneeling, crouching, reaching, handling, and fingering – which Dr. Dale said plaintiff could never do, but the ALJ said she could occasionally or frequently do – the ALJ discussed specific medical evidence supporting the occasional or frequent limitations. (Tr. 22-25). With respect to reaching, handling, and fingering, the ALJ observed that plaintiff's electromyogram and nerve conduction studies revealed only mild bilateral median entrapment neuropathy in the wrists with no active cervical radiculopathy. (Tr. 233, 265). Plaintiff reported that she underwent carpal tunnel surgery in July 2013, which left the tips of her fingers numb but improved her pain. (Tr. 265). As of 2014, Ms. Davenport noted only minor osteoarthritic impairments with no active peripheral joint swelling or loss of range of motion. (Tr. 264).

With respect to climbing, stooping, kneeling, and crouching, the ALJ noted that while plaintiff had multiple tender points and some observations of decreased strength and range of motion, she had mild findings on medical imaging, fairly well-preserved range of motion, an overall coordinated and smooth gait, no focal motor or sensory weakness, and stabilized pain on medications. (Tr. 24-25). These reasons are supported in the record. Upon examination in 2012, plaintiff had 80 percent grip strength, 4+/5 strength in the proximal upper and lower extremities, and was encouraged to regularly exercise. (Tr. 253-54, 261). At an examination in 2013, she was found to have an overall coordinated and smooth gait, fairly well-preserved range of motion of the cervical and lumbar spine, normal motor strength and tone, mostly 2+ deep tendon reflexes, and a negative straight leg. (Tr. 242-45). The ALJ lawfully referred to medical observations, as well as plaintiff's testimony about her activities of daily living, in concluding that she was capable of occasionally climbing ramps and stairs, stooping, kneeling, and crouching, and frequently reaching, handling, and fingering. (Tr. 21-25).

14

## III. CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

                                                        /S/ David D. Noce  
                                      **UNITED STATES MAGISTRATE JUDGE**

Signed on June 19, 2017.